UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 04 B 40369 |
| | ) | Chapter 13 |
| MATTHEW PHILLIP ARGUIN, SR. and | ) | Judge John H. Squires |
| MARIE LOUISE ARGUIN, | ) | |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Matthew Phillip Arguin, Sr. and Marie Louise Arguin (the "Debtors") to modify their confirmed Chapter 13 plan and on the objection thereto filed by AmeriCredit Financial Services, Inc. (the "Creditor"). The issue is whether the Debtors' confirmed plan can be amended to surrender a used motor vehicle to the Creditor who holds a secured claim. In lieu of making further payments on that claim, the Debtors seek to relegate the unpaid secured component of the claim to unsecured status for the balance of the amended plan term, and seek to reduce the term of the plan from its present duration of fifty-six months to thirty-six months. For the reasons set forth herein, the Court denies the Debtors' motion and sustains the Creditor's objection.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (L), and (O).

-2-

## II. FACTS AND BACKGROUND

The Debtors filed a Chapter 13 petition, schedules, and a plan on November 1, 2004. The Debtors listed a 2001 Mitsubishi Gallant ES motor vehicle (the "Vehicle") on their schedules as one of their assets. The Creditor was scheduled as holding an undisputed secured claim. The retail installment contract for the purchase of the Vehicle, which was financed by the Creditor, provided that the husband Debtor agreed to make seventy-two monthly payments of $444.12 at 17.95% interest beginning on July 1, 2001. The Creditor filed a proof of claim that asserted a secured interest in the Vehicle in the sum of $16,487.02. The Debtors proposed to make monthly plan payments to the Chapter 13 Standing Trustee and proposed to pay the Creditor's secured claim in the principal amount of $6,150.00 plus interest of 5.75%. Unsatisfied with the plan's treatment of its secured claim, the Creditor, prior to the confirmation hearing, filed a motion to modify the automatic stay, which sought pre-confirmation adequate protection payments, combined with an objection to confirmation. The Creditor asserted that the retail value of the Vehicle was $7,950.00, and requested that its secured claim be paid at the contractual rate of interest.

The parties settled their dispute regarding the Vehicle, which was reflected in the Debtors' amended plan filed on December 14, 2004. In pertinent part, this plan provided payments to the Creditor for its secured claim in the principal amount of $7,950.00, plus a simple interest rate of 11.5% per annum. On December 23, 2004, that plan was confirmed. The balance of the Creditor's claim was effectively treated as an allowed unsecured claim in the sum of $8,537.02 as a result of the bifurcation of the proof of claim with its allowed secured and unsecured components under 11 U.S.C. § 506(a).

-3-

Thereafter, the Debtors moved to further modify the amended confirmed plan by a subsequent plan dated March 31, 2005. This plan reduced the amount of the Debtors' remaining monthly plan payments and extended the term of the plan to a total of fifty-six months. The treatment of the Creditor's secured claim was unchanged. The plan was confirmed without objection on April 22, 2005.

The instant motion to modify the confirmed plan was filed on March 21, 2006. The motion alleges that as of December 2005, the Vehicle is no longer operable. The Debtors want to surrender the Vehicle to the Creditor and cease making payments on the Creditor's secured claim until an amended unsecured deficiency claim is filed. Further, the Debtors seek to reduce the term of the plan from its present fifty-six month duration to thirty-six months. In support of their motion, the Debtors supplied a joint affidavit averring that they did not abuse the Vehicle; that they maintained the Vehicle with regular oil changes; that they did not damage the Vehicle; and that they made every effort to keep the Vehicle in the best shape possible. Nevertheless, the ultimate reason for the present inoperable condition of the Vehicle is not specified.

Although the Debtors failed to cite any Bankruptcy Code provision in their motion, their subsequent memorandum in support thereof cites to 11 U.S.C. §§ 1329, 502(j), and 506(a). Accordingly, the Court will consider the motion under these provisions. The Debtors allege that to date, the plan payments made to the Creditor total $2,469.57.[1] The Debtors first contend that § 1329 expressly permits them to modify the plan to allow for the surrender of the Vehicle to the Creditor, to reduce the remaining payments to be made on the secured claim to zero, and to pay

---

[1] The Creditor disputes this sum and contends that it has received only $971.20 toward the principal balance due on its secured claim. This discrepancy is not outcome determinative with respect to the disputed issues of law.

-4-

any deficiency balance remaining as an unsecured claim after the Creditor liquidates the collateral. Moreover, the Debtors maintain that § 502(j) permits reconsideration of claims at any time for adequate cause. Furthermore, they argue that § 506(a) provides that a creditor is entitled to a secured claim only to the extent of the collateral's value, and such a determination can occur post-confirmation. The Debtors also contend that because the binding effect of a confirmation order entered under 11 U.S.C. § 1327 is subject to post-confirmation modifications pursuant to the permitted terms of § 1329, the doctrines of res judicata and collateral estoppel do not preclude the relief sought.

The Creditor, on the other hand, argues that the effect of the Debtors' proposal is to reclassify the remaining balance of its allowed secured claim to virtual unsecured status by further payments of zero, and force it to increase the unsecured component of its claim by such unpaid amount, instead of receiving $9,694.00, including interest, promised under the confirmed plan. The Creditor also asserts that the Court should apply the doctrine of collateral estoppel. Specifically, the Creditor maintains that a party cannot change payments provided for under a confirmed plan or challenge the valuation of collateral fixed by the plan. According to the Creditor, the confirmation order has preclusive effect on all issues that were raised or could have been raised prior to confirmation, especially when a claim is filed pre-confirmation or when a plan sets the value of the collateral. The Creditor concludes that because it negotiated a settlement of its original plan objection, which was reflected in the amended plan, and that plan was confirmed at a time when the Debtors had an opportunity to litigate all issues concerning the Creditor's claim prior to confirmation, the Debtors are estopped from raising arguments regarding the secured claim other than within the limits of § 1329.

### III. DISCUSSION

There is a substantial division of opinion on the issue of whether a secured claim holder in a Chapter 13 case can be required post-confirmation to accept the surrender of its collateral in full satisfaction of its remaining unpaid allowed secured claim. *See* 3 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY §§ 238.1 & 264.1 (3d ed. 2000 & Supp. 2004) (collecting cases). The problem is one created by an absence of clear statutory guidance. Unfortunately, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[2] does not address this issue, which cries out for legislative remediation and clarification.

Modifications to a confirmed plan are allowed under § 1329, which provides in relevant part as follows:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to–
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time for such payments; or
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. § 1329(a) & (b)(1). Modifications are allowed only in the three limited circumstances set forth in § 1329(a)(1), (2), and (3). *In re Witkowski*, 16 F.3d 744, 745 (7th Cir. 1994). One

---

[2] Because this case was filed prior to October 17, 2005, it is not governed by BAPCPA.

Case 04-40369 Doc 47 Filed 07/24/06 Entered 07/24/06 14:49:24 Desc Main
Document Page 6 of 12

-6-

court has held that a debtor is precluded from modifying a plan to reclassify a secured claim as unsecured following the surrender of collateral post-confirmation. *In re Smith*, 259 B.R. 323, 326 (Bankr. S.D. Ill. 2001). According to *Smith*, § 1329(a) makes no provision for a debtor to reclassify claims. *Id.* Even though at the time of original confirmation a debtor may surrender collateral that secures a creditor's claim and receive a credit against future plan payments on the claim under § 1329(a)(3), the *Smith* court opined that nothing in the statute allows a debtor to reclassify the remaining amount due as an unsecured claim post-confirmation. *Id.*

Judge Lundin's seminal treatise notes that there are four lines of cases with respect to the issue of whether a debtor can modify a plan in order to require a secured creditor to accept the surrender of its collateral in full satisfaction of its unpaid allowed secured claim. LUNDIN, CHAPTER 13 BANKRUPTCY § 264.1 at 264-4 to 264-20. In support of their motion, the Debtors cite to the first line of cases. *See In re Zieder*, 263 B.R. 114 (Bankr. D. Ariz. 2001); *In re Mason*, 315 B.R. 759 (Bankr. N.D. Cal. 2004); *In re Townley* 256 B.R. 697 (Bankr. D. N.J. 2000); and *In re Anderson* 153 B.R. 527 (Bank. M.D. Tenn. 1993). Under this view, modification of the plan is allowed because surrender of the collateral alters the distribution to the secured creditor and produces a modification of the scheduled payments on the secured component of the claim to the extent of the payments already received, and, thus, does not reflect a proscribed "reclassification" of the claim. Pursuant to this position, the language of § 502(j) does not limit reconsideration of claims to the time of confirmation of the plan. Because that provision deals with the effect that such reconsideration might have on distributions already made on claims, it contemplates that such reconsideration might occur after confirmation.

-7-

The Creditor cites to the second line of cases in support of its objection to the Debtors' motion. *See In re Nolan*, 232 F.3d 528 (6th Cir. 2000); *In re Adams*, 270 B.R. 263 (Bankr. N.D. Ill. 2001); *In re Smith*, 259 B.R. 323 (Bankr. S.D. Ill. 2001); *In re Coleman*, 231 B.R. 397 (Bankr. S.D. Ga. 1999); and *In re Taylor*, 99 B.R. 902 (Bankr. C.D. Ill. 1989). The leading case in that group, *In re Nolan*, held that a debtor is prohibited from surrendering collateral post-confirmation and amending the plan to effectively reclassify a creditor's unpaid secured claim component as an unsecured deficiency balance. 232 F.3d at 535. According to *Nolan*, § 1329 does not allow a debtor to alter, reduce, or reclassify a previously allowed secured claim to virtual unsecured status. *Id.* at 532. Rather, § 1329 only affords a debtor the right to request alteration of the amount or timing of specific payments, and should not be read so broadly as to authorize reclassification of a secured claim. *Id.* at 532-33. Section 1325(a)(5)(B)(ii) of the Code provides adequate protection to the creditor when the debtor chooses to retain the collateral by requiring that the value of property, as of the effective date of the plan, to be distributed under the plan on account of such claim, must be not less than the allowed amount of the claim. *Id.* at 533. Thus, the secured claim plan payments must not be subject to modification throughout the life of the plan. *Id.* at 532-33 n.8. Moreover, *Nolan* postulated that § 1327 does not embrace the unlikely congressional intent to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has use for the subject asset. *Id.* at 533.

Specifically, the *Nolan* case stated that "[t]here is no indication that Congress intended to allow debtors to reap a windfall by employing a subterfuge that unfairly shifts away depreciation, deficiency, and risk voluntarily assumed by the debtor through [the] confirmation

-8-

of the Chapter 13 plan." *Id.* at 534. Because secured creditors are not included in § 1329(a) as a party vested with standing to seek modification of a plan, according to *Nolan*, modification and reclassification of a secured creditor's claim creates an "inequitable situation" where the secured creditor could not seek to reclassify its claim in the event the collateral appreciated even though the debtor could seek to revalue or reclassify the claim whenever the collateral depreciated. *Id. Nolan* noted that § 1329 "clearly indicates that modifications after plan confirmation cannot alter a claim . . . , but can extend or compress payments and reduce or increase the amount of the delivery of value planned as an eventual satisfaction for the creditor's claim." *Id.* at 535.

Judge Lundin notes two additional lines of cases: one permitting modification of a confirmed plan to reflect repossession or surrender of collateral and to reduce the allowable secured claim if the debtor otherwise meets the standards for a modified plan, LUNDIN, CHAPTER 13 BANKRUPTCY § 264.1 at 264-4 - 264-5 n.22.; and another finding no categorical bar in § 1329 to modification to surrender collateral or account for repossession, but where proposed modified plans are rejected for reasons found in §§ 1322 or 1325, *id.* at 264-22.

The Seventh Circuit has not yet ruled on the issue at bar. *Smith*, 259 B.R. at 325. According to the *Smith* case, however, the Circuit's rulings on other § 1329 issues indicate it would "adopt a narrow, rather than expansive, interpretation of § 1329(a)." *Id.* In light of the arguments of the parties and the non-binding, but helpful, authorities set forth *supra*, the Court must consider the instructive dicta from other decisions of the Seventh Circuit. The Court notes that pursuant to 11 U.S.C. § 1327, the Seventh Circuit gives great weight to the binding effects of Chapter 13 confirmation orders. Significant, and apparently overlooked by the parties, is the proposition that a secured claim which is filed pre-confirmation without objection, and, therefore,

-9-

"allowed" and treated in a subsequently confirmed Chapter 13 plan, cannot be attacked later as to the secured value. *Adair v. Sherman*, 230 F.3d 890, 894-95 (7th Cir. 2000). Such is the case in the matter at bar. Hence, pursuant to *Adair*, the Creditor's allowed secured claim of $7,950.00, plus simple interest of 11.5% per annum, for an estimated total of $9,694.00, cannot be directly or indirectly attacked via the motion at bar. Moreover, the parties are bound by the valuation of the Vehicle in the confirmed plan where such value was not challenged before confirmation and the confirmed plan itself specifies such value. Both the Debtors and the Creditor are bound by the terms of the confirmed plan. *See* 11 U.S.C. § 1327(a); *In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993); *see also In re Pence*, 905 F.2d 1107, 1110 (7th Cir. 1990) (finding that erroneous valuation of collateral could not be corrected after confirmation of Chapter 13 plan).

Thus, the Court agrees with *Adams*, which aptly noted that § 1329 cannot be used by the Debtors to strip down the Creditor's secured claim that was previously "crammed down" at confirmation to the negotiated and agreed principal sum of $7,950.00, plus 11.5% simple interest. Because the confirmed plan fixed and determined the value of the secured claim, that issue cannot be revisited or revised. The Debtors are collaterally estopped from using §§ 502(j) or 506(a) under *Adair*, *Chappell*, and *Pence* to accomplish the relief they seek. Unlike the facts in *Adams*, where no secured claim was on file pre-confirmation, the Court cannot properly use § 506(a) here to revalue the Creditor's claim at zero conditional upon the surrender of the Vehicle. Nothing in either §§ 502(j) or 506(a) allows a confirmed plan to be modified; only § 1329(a) allows plan modification. Therefore, under *Adair*, because the Creditor's pre-confirmation secured claim was not challenged, it cannot be collaterally attacked or revalued at zero after surrender of the Vehicle.

Moreover, even though § 502(j) does not have any time limits for reconsideration of the Creditor's allowed secured claim, it hardly seems appropriate "according to the equities of the case" to allow the Debtors, who have had possession and use of the Vehicle, to change the negotiated deal made with the Creditor at confirmation to pay it an estimated total of $9,694.00. *See* 11 U.S.C. § 502(j). In marked contrast, the proposed treatment in the instant motion is to cease making any further payments on the allowed secured claim and return the Vehicle in satisfaction of the secured claim. The opportunity to increase the Creditor's unsecured claim component by the difference in the remaining unpaid allowed secured claim less any salvage or other value received upon liquidation or other disposition of the Vehicle by the Creditor is of likely little substantial economic value because the estimated dividend to unsecured claim holders is 10% of their allowed claims. Furthermore, any additional payment on this component will further dilute the projected dividends to the other allowed unsecured claim holders. Under these facts, it is understandable and obvious why the Creditor would prefer to continue to receive the promised stream of payments under the confirmed plan–the inoperable, used Vehicle is not likely a collector's item for which there is a ready market eager to pay the $7,000.00-$8,000.00 shortfall in payments.

Accordingly, the Court concludes that the motion should be denied. It does not merely seek to shift or reallocate the risk of depreciation in the Vehicle's value to the Creditor. Rather, the motion seeks to alter the repayment terms of the allowed secured claim. Instead of the stream of payments promised under the plan, which were to total approximately $9,694.00, the Creditor is to receive only the amount it has been paid to date, plus whatever salvage value may be recovered for the Vehicle, with an attendant increase in the Creditor's unsecured claim for the

-11-

resulting deficiency. This result effectively "reclassifies" a substantial part of the Creditor's allowed secured claim to unsecured status, and, under the Seventh Circuit's view, exceeds the limited uses of § 1329(a). The Court agrees with the reasoning in the *Nolan*, *Smith*, and *Taylor* cases. Absent some other motion that meets the requirements of § 1329, the Debtors must consummate their confirmed plan in order to achieve a Chapter 13 discharge. Otherwise, their options are either a voluntary or other dismissal or conversion under 11 U.S.C. § 1307.

## IV. CONCLUSION

For the foregoing reasons, the Court denies the Debtors' motion and sustains the Creditor's objection.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 7/24/6

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### In re Maria L. Arguin and Matthew P. Arguin, Sr.
### Bankruptcy No. 04 B 40369

W. Alexander Wilson, Esq.
Law Offices of Peter Francis Geraci
55 E. Monroe Street, Suite 3400
Chicago, IL 60603

David J. Frankel, Esq.
Sorman & Frankel, Ltd.
203 N. LaSalle Street, Suite 2350
Chicago, IL 60601

Glenn B. Stearns
Chapter 13 Standing Trustee
4343 Commerce Court, Suite 120
Lisle, IL 60532

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606